**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

SEAN M. McGINLEY,

Plaintiff,

Case No. 1:18-cv-129-TPK

v,

COMMISSIONER OF SOCIAL                    OPINION AND ORDER
SECURITY,

Defendant.

## OPINION AND ORDER

Plaintiff Sean M. McGinley filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on November 27, 2107, denied Mr. McGinley's application for supplemental security income. Mr. McGinley has now moved for judgment on the pleadings (Doc. 11). For the following reasons, the Court will deny Plaintiff's motion and will direct the Clerk to enter judgment in favor of the Defendant Commissioner.

## I.  BACKGROUND

This is not Plaintiff's first application for benefits. He had filed a previous application but it was dismissed on June 24, 2013, following his failure to appear at a scheduled administrative hearing. The current application was filed on February 20, 2014, and, as amended, alleged disability beginning on June 25, 2013.

After initial administrative denials of his claim, Plaintiff appeared at an administrative hearing held on June 22, 2016. He was then referred for a consultative examination, and a second hearing was held on September 9, 2016. Vocational experts testified at both hearings.

The Administrative Law Judge issued an unfavorable decision on September 20, 2016. He concluded that Plaintiff suffered from several severe impairments, including degenerative disc disease of the lumbar and cervical spines, major depressive disorder, anxiety disorder, migraine headaches, and obesity. According to the ALJ, these impairments limited Plaintiff to the performance of a limited range of light work. He could stand and sit for up to four hours in a day and walk for up to three hours, needed to change positions at will, could frequently use foot controls with his left foot, and could only occasionally use foot controls with his right foot, climb stairs, ladders, ramps and scaffolds, stoop, crouch, and crawl. From a psychological standpoint,

Plaintiff could perform only simple, routine tasks and could have only occasional interactions with supervisors.

At the second hearing, the vocational expert, Ms. Ruhnke, was asked to testify about whether a person with Plaintiff's work capacity could do either his past work (which consisted of gas station attendant, retail sales clerk, security guard, and cleaner/housekeeper) or other jobs. She said he could not perform any of the past jobs, but that he could work as an office helper, mail clerk, or photocopying machine operator. The ALJ accepted this testimony, along with testimony about the number of these jobs which exist in the national economy, and found that because Plaintiff could still perform substantial gainful activity, he was not disabled within the meaning of the Social Security Act.

Plaintiff, in his statement of errors, asserts that there are two separate reasons for reversing the ALJ's decision and remanding the case. He argues, first, that the ALJ did not properly evaluate the opinion of Dr. Calabrese, a treating source; under that opinion, Plaintiff would not be able to work. Second, he contends that the ALJ erred because, after finding that Plaintiff's migraine headaches were a severe impairment, he then concluded - inconsistently - that those headaches did not significantly limit Plaintiff's ability to work.

## II. THE KEY EVIDENCE

Plaintiff's statement of errors focuses on only the ALJ's evaluation of Dr. Calabrese's opinion and on the way the ALJ evaluated Plaintiff's migraines. The Court will briefly summarize the evidence relating to each of these issues.

Plaintiff was seen in Dr. Calabrese's practice for a variety of issues, including low back pain, headaches, and anxiety. On May 12, 2016, Dr. Calabrese apparently signed off on a physical capacity evaluation form prepared by his nurse practitioner, Ms. Shea (only her signature appears on the form, but the parties have treated it as representing Dr. Calabrese's opinion as well) which limited Plaintiff to the performance of a limited range of light work - fairly consistent with the ALJ's evaluation on that issue - but which also concluded that Plaintiff's attention and concentration even to simple tasks would be occasionally interfered with by his pain. On the form in question, "occasionally" was defined to mean between 6% and 33% of the time. Nevertheless, the form also indicated that Plaintiff was capable of low stress work. Of perhaps most significance, the form stated that Plaintiff would miss up to four days of work per month due to his various symptoms, a rate of absence that is incompatible with sustained employment. (Tr. 628-32).

There is a second physical capacity evaluation in the record, done by the consultative examiner, Dr. Schwab. After diagnosing Plaintiff with low back pain with right leg radiculopathy, Dr. Schwab also limited Plaintiff to light work, but he did not indicate that Plaintiff would be required to miss a significant amount of work on account of his symptoms. (Tr. 634-42). The ALJ accepted Dr. Calabrese's opinion in part - essentially everything but the conclusion about missing four days of work per month - but fully credited Dr. Scwhab's opinion because it was, in

the ALJ's view, consistent with the record as a whole and was specific to Plaintiff's orthopedic condition. It is perhaps worth noting that Dr. Calabrese's opinion included a statement that Plaintiff suffered from psychological conditions and that those conditions also affected Plaiantiff's residual functional capacity.

With respect to migraine headaches, Plaintiff testified to having such headaches frequently, and he also sought treatment for them from time to time. As the ALJ noted, however, in deciding that these headaches did not impose significant work-related limitations, that treatment was infrequent, there were treatment notes which indicated that Plaintiff's headaches were under control, and that Plaintiff took only over-the-counter medication to treat his headaches.

## III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV. DISCUSSION

### A. The Opinion of the Treating Physician

When this case was decided, the "treating physician" regulation found at 20 C.F.R.

§416.927 was still in effect (it has since been repealed). As this regulation and its companion regulation, 20 C.F.R. §404.1527, have been interpreted,

"the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.' " [*Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir.2008)] at 128 (quoting 20 C.F.R. § 404.1527(c)(2)). There are, of course, circumstances when it is appropriate for an ALJ not to give controlling weight to a treating physician's opinion. *See, e.g., Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (per curiam) (holding that "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts"). Nevertheless, even when a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive. See 20 C.F.R. § 404.1527(c)(2)(I), (2)(ii), (3)–(6). "[T]o override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir.2013) (per curiam). "After considering the above factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Burgess*, 537 F.3d at 129 (alteration in original) (*quoting Halloran*, 362 F.3d at 33). The failure to provide " 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id*. at 129–30 [citation omitted]. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion. *Id*. at 131.

*Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015).

Plaintiff advances two reasons why, in his view, the ALJ violated the "treating physician" regulation. The Court addresses each in turn.

First, Plaintiff argues that the ALJ did not adequately explain why he did not credit Dr. Calabrese's opinion that Plaintiff would miss up to four days of work per month due to his various symptoms. The ALJ addressed this limitation directly, stating that there was "no evidence to support that the claimant would be absent from work four days per month" and that "the objective imaging and evaluations do not support the degree of limitation and it is not supported by a consultative exam ...." (Tr. 23). In his brief, Plaintiff does not cite to specific evidence supporting his need to miss four days of work per month, other than to note that the opinion in question appears to have factored psychological impairments into the mix.

Nurse practitioner Shea evaluated Plaintiff's ability to work as early as December of 2014. In a form completed at that time, she indicated he could do light work and did not list any other restrictions such as the need to miss multiple days of work per month. (Tr. 533). A different person affiliated with Dr. Calabrese filled out a form in January, 2015, stating Plaintiff was unable to work, indicating that the medical practice was waiting for an appointment with a neurologist for better control of Plaintiff's headaches. (Tr. 536). At that point, his anxiety and depression were described as stable. (Tr. 537). Ms. Shea continued Plaintiff off work in February, 2015, although without any specific explanation, and did the same the following month. A treatment note from July, 2015, shows that Plaintiff needed frequent position changes and that medication decreased his pain and increased his functioning. His anxiety and depression continued to be stable. (Tr. 545). A note from January 19. 2016 indicates that Plaintiff was not always experiencing relief with his pain medications but that he was taking Xanax and Lexapro with good effect and that his headaches were under control. (Tr. 552). Although it appears that Plaintiff was being seen monthly by Dr. Calabrese's office, there do not appear to be any progress notes from that office after January of 2016.

This review of the record supports the ALJ's conclusion that there is simply no evidence explaining why nurse practitioner Shea or Dr. Calabrese believed that Plaintiff would miss up to four days of work per month. The physical limitations contained in the opinion appear to account for the symptoms Plaintiff reported concerning his pain, the effect of his medication, and his need to change positions frequently. To the extent that the restriction on working a full month stemmed from psychological factors, the progress notes consistently show that Plaintiff's anxiety and depression were well-controlled by medication, and the opinion also indicated that Plaintiff was capable of low-stress work. Nothing appears to explain the view that even if Plaintiff's work demands were limited in this way, he would still experience an exacerbation of his psychological symptoms to the point where he would be completely unable to work for as many as four days per month. Under these circumstances, where the treating source's opinion does not appear to find any support in the record, the ALJ was not required to adopt it. *See, e.g., Brush v. Berryhill*, 294 F.Supp.3d 241, 258 (S.D.N.Y. 2016)(lack of support in record is a sufficient reason for an ALJ to give less than controlling weight to a treating physician opinion).

Plaintiff also takes issue with the ALJ's treatment of that portion of the opinion dealing with the effect which Plaintiff's symptoms had on his ability to maintain attention and concentration. According to Plaintiff, Dr. Calabrese concluded that this ability would be affected for at least 15% of the workday, and such a limitation is not compatible with maintaining employment.

On this issue, the ALJ focused on the statement, contained in the same opinion, that Plaintiff could perform a low-stress job. The ALJ also summarized a number of mental health treatment notes indicating that Plaintiff's psychological conditions were stable and that Plaintiff was actively seeking part-time work. There was also an evaluation done by Dr. Fabiano in 2014 which showed that Plaintiff had only a mild limitation in attention and concentration. The ALJ gave this opinion great weight because it was consistent with the balance of the records concerning psychological treatment (Tr. 25). Further, it appeared that Plaintiff was not seeing a psychologist in 2016 and, again, the notes from Dr. Calabrese's office indicated that medication

was controlling Plaintiff's anxiety and depression. There is therefore sufficient evidence to support the ALJ's conclusion that Plaintiff could perform simple, routine work, even if Dr. Calabrese felt differently - and it is not clear that he did, since the definition of "occasionally" on the form filled out by his office said that an occasional problem could be one that occurred only 6% of the time, as opposed to the 15% frequency which is work-preclusive. Under these circumstances, the ALJ did not err in concluding that Plaintiff had sufficient attention and concentration to do the jobs identified by the vocational expert.

The final issue raised in Plaintiff's motion deals with his migraine headaches. The record does reflect a diagnosis and a course of treatment for this condition, and the ALJ found it to be a severe condition, which, by definition (*see* 20 C.F.R. §416.922) means that it significantly limits a claimant's "physical or mental ability to do basic work activities." As Plaintiff notes, after making this finding at step two of the five-step sequential evaluation process, *see* 20 C.F.R. §416.920(a)(4), the ALJ concluded, somewhat inconsistently, that Plaintiff's migraines were not "significantly limiting...." (Tr. 24). Plaintiff asserts that when evaluating a condition like migraines which is not susceptible to objective testing - at least as to their frequency and severity - the ALJ had to give additional weight to Plaintiff's subjective testimony and erred by not doing so.

Plaintiff cites to *Makelke v. Comm'r of Social Security*, 2018 WL 4103179 (W.D.N.Y. Aug. 29, 2018) as authority for the proposition that an ALJ may not find both that migraines are a severe condition and that they do not limit a claimant's ability to do basic work activities. Certainly, there is an inherent contradiction between the two findings, but *Makelke* indicates that the key question is whether the ALJ relied on substantial evidence in making the finding that there were no significant limitations flowing from the claimant's migraine headaches. There, the ALJ both failed to discuss significant evidence of the claimant's migraines and stated, incorrectly, that there was no current documented treatment for headaches. Those failures, coupled with the Plaintiff's testimony that her headaches were debilitating, led the Court to order a remand. Here, by contrast, the ALJ both correctly summarized and adequately discussed the treatment records, which are somewhat sparse, and determined, based on that evidence, that Plaintiff's headaches were adequately controlled to the point that they did not interfere with his ability to work, at least beyond those limitations contained in the ALJ's residual functional capacity finding. The ALJ is entitled to interpret the medical evidence and to resolve conflicts in it so long as that resolution is one which a reasonable person might reach. *See Vargas v. Astrue*, 2011 WL 2946371, *15 (S.D.N.Y. July 20, 2011)(genuine conflicts in the medical evidence are generally for the ALJ to resolve). The Court therefore finds no error in the ALJ's treatment of the issue of migraine headaches, even though it would have been better had the ALJ not made seemingly inconsistent findings on this issue. The ultimate resolution of the issue against Plaintiff was supported by substantial evidence.

## V. CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 11) and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner and to dismiss this case.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**